HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW LEUNG, <br><br> Defendant. | CASE NO. C13-29RAJ <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the court on Plaintiff's motion for default judgment. Dkt. # 15.  For the reasons stated below, the court DENIES the motion, without prejudice to a motion that addresses the concerns the court identifies in this order.

## II.  BACKGROUND

Accepting Plaintiff's version of events, Defendant Andrew Leung is up to no good.  As described in the complaint of Plaintiff T-Mobile USA, Inc. ("T-Mobile") and in its motion for default judgment, Mr. Leung engages in two related schemes to deprive T-Mobile of revenue that it expects from its prepaid cellular phone services.

Although the complaint is unclear, it appears that the prepaid services on which this case focuses are services that do not require a long-term commitment from a cellular customer.  Although the customer pays a monthly fee, he or she is not obligated to

ORDER – 1

continue paying such fees. In addition (or perhaps as a component of the monthly fee), prepaid customers pay in advance for the minutes of cellular airtime that they use.

T-Mobile sells phones to prepaid customers only at authorized retailers. All of those phones contain SIM cards, which apparently store information, including information about airtime, that enable T-Mobile to control its prepaid services. T-Mobile subsidizes the sale of its phones by selling them at a retail price below their cost, with the hope that the customers who purchase the phones will eventually make T-Mobile's subsidy profitable by purchasing additional months of service and additional airtime. As an additional inducement to purchase, the subsidized phones often (or perhaps always) come with SIM cards that are pre-loaded with an allotment of airtime minutes. In order to use the SIM cards, customers must "activate" their phones. Often, this process takes place with the assistance of the authorized retailer who sells the phone. Sometimes, customers activate their phones through a T-Mobile website by using activation codes that are packaged along with the phones.

Mr. Leung subverts T-Mobile's expectations in two ways. First, he and "runners" acting at his direction buy prepaid T-Mobile phones. Although the complaint does not explain how, it appears they are able to do so without activating the phones through the authorized retailers from whom they buy them. Mr. Leung then sells the phones to customers both overseas and domestically. To do so, he "unlocks" the phone, which is to say that he disables or modifies software or hardware embedded in the phones that is designed to ensure that the phones are used only on T-Mobile's cellular network. Mr. Leung profits because he obtains phones at a subsidized price and resells them for a higher price.

In addition, Mr. Leung resells SIM cards extracted from T-Mobile phones. He sometimes does so by honestly stating the number of airtime minutes embedded on each card. Other times, he falsely advertises the SIM cards as permitting "unlimited" minutes

ORDER – 2

or otherwise overstates the amount of airtime.  In order to resell SIM cards, it appears that Mr. Leung at least sometimes uses T-Mobile activation codes.  Because customers who purchase such SIM cards are invariably T-Mobile customers, some of them blame T-Mobile when they discover that their cards provide less airtime than advertised.  Some of them contact T-Mobile to complain.  In addition, when the customers to whom Mr. Leung sells SIM cards use their minutes, T-Mobile sometimes incurs costs in the form of roaming fees – fees that it pays to compensate other cellular network providers when T-Mobile customers use their phones in areas that T-Mobile's network does not serve.

The court knows little about Mr. Leung himself.  He lives in New York City.  He was once an employee of an authorized T-Mobile retailer, but no longer.  T-Mobile has known about his activities since at least April 2010.  The only specific information available to the court about the manner in which Mr. Leung makes sales is a collection of hundreds of pages of ads from the Craigslist website.  In late December 2012 and early January 2013, Mr. Leung used Craigslist's New York forum to advertise T-Mobile phones and SIM cards.

T-Mobile filed this suit in January.  It served Mr. Leung; he did not appear in the action, answer T-Mobile's complaint, or otherwise defend himself.  The court entered Mr. Leung's default in February.

T-Mobile motion for default judgment came more than two months later.  It asks the court to enter a judgment consisting of an award of just over $475,000, along with a permanent injunction that would bar Mr. Leung from engaging in any commerce involving T-Mobile phones.

Despite a 37-page complaint purporting to state 14 causes of action against Mr. Leung, and a 12-page motion attempting to explain how T-Mobile is entitled to relief based on each of those 14 causes of action, the court is not convinced that it has any basis

ORDER – 3

for awarding the requested judgment or injunction. The court now explains that conclusion.

### III. ANALYSIS

The court's role in reviewing a motion for default judgment is not ministerial. It must accept all well-pleaded allegations of the complaint as fact, except facts related to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where those facts establish a defendant's liability, the court has discretion, not an obligation, to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The plaintiff must submit evidence supporting a claim for a particular sum of damages. *TeleVideo Sys.*, 826 F.2d at 917-18; *see also* Fed. R. Civ. P. 55(b)(2)(B). If the plaintiff cannot prove that the sum it seeks is "a liquidated sum or capable of mathematical calculation," the court must hold a hearing or otherwise ensure that the damage award is appropriate. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

Some of T-Mobile's causes of action are not well-pleaded. Its claim for breach of contract is one example. T-Mobile's phones are apparently sold with a "shrinkwrap" contract – a contract inside the phone's packaging that binds the purchaser. T-Mobile has attached that 10-page contract to its complaint, but has not cited a single clause within it. The court is not obligated to hunt through the contract in search of a clause that Mr. Leung breached. Even so, the court has reviewed the contract, and finds no clause that Mr. Leung obviously breached. The court found no clause, for example, that prohibits the resale of T-Mobile phones or requires a minimum purchase of airtime or service.

As another example, T-Mobile contends that Mr. Leung tortuously interfered[1] with various contracts or business expectancies. One of those contractual relationships is T-Mobile's relationship with its retailers, who apparently typically receive a customer's

---

[1] T-Mobile asserts, without explanation, that Washington's tortious interference law applies to Mr. Leung's conduct. The court need not explore that assertion for purposes of this order.

ORDER – 4

first-month's payment as a commission for the sale of a T-Mobile phone. But if Mr. Leung is indeed interfering with that relationship, it is T-Mobile's retailers, not T-Mobile, who are suffering the harm. T-Mobile expects to sell its phones to customers who will purchase more months of service and airtime, but Mr. Leung can only be liable for interfering with that relationship if he uses an unlawful means to compete with T-Mobile. But nothing in the complaint or motion adequately explains how Mr. Leung's conduct, even if it subverts T-Mobile's expectations, is unlawful.

T-Mobile contends that Mr. Leung violated that Lanham Act. As to the provisions of the Lanham Act that prohibit false designations of origin, *e.g.*, 15 U.S.C. § 1125(a)(1)(A), the court is not persuaded. The evidence before the court (largely in the form of the Craigslist advertisements) suggests that Mr. Leung properly designates the origin of the phones and SIM cards he sells. He advertises them as T-Mobile products. It appears that he merely resells T-Mobile products, and neither the complaint nor the motion explain why the first sale doctrine does not protect his right to do so. To the extent that T-Mobile contends that Mr. Leung violates portions of the Lanham Act prohibiting false advertising, *e.g.*, 15 U.S.C. § 1125(a)(1)(B), it succeeds only to the extent it alleges that he overstates the number of airtime minutes associated with some SIM cards that he sells.[2] The court could likely enjoin that practice, but T-Mobile has not asked for an injunction against false advertising, perhaps because its broad injunction would prevent Mr. Leung from selling T-Mobile SIM cards at all, not merely from engaging in false advertising. The court could also likely award damages arising from the false advertising, but T-Mobile has not separately identified damages arising from that practice.

---

[2] By comparison, in *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1128-29 (W.D. Wash. 2012), the court had evidence that the defendant falsely represented himself as an authorized T-Mobile dealer. There is no comparable evidence in this case.

ORDER – 5

Similarly unpersuasive are T-Mobile's allegations of fraud.  At a minimum, fraud requires a false statement of fact to T-Mobile.  The court cannot find one in the complaint or the motion.  T-Mobile appears to contend that merely by buying its phones, Mr. Leung represents that he will use them for the purposes for which T-Mobile intends them.  But that contention finds no plausible support in the allegations of the complaint.  Indeed, the complaint suggests that Mr. Leung (or his runners) make no representations at all when they buy T-Mobile phones.

T-Mobile also invokes the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  To successfully allege a claim under that statute, T-Mobile would need to plausibly allege that Mr. Leung gained unauthorized access to its computer systems.  But the complaint falls short.  It merely alleges that Mr. Leung uses SIM card activation codes to activate phones or SIM cards on T-Mobile's activation website.  When "legitimate" T-Mobile customers do so, they violate no law.  In order to understand what an "illegitimate" customer like Mr. Leung has done wrong by engaging in the same conduct, the court would need to understand at a minimum how T-Mobile informs the public about who is authorized to use its activation system.  It would also need to understand how Mr. Leung's conduct is more than a mere violation of T-Mobile's use restrictions, as Ninth Circuit law requires.  *See United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).  That information is missing from the complaint and the motion.

T-Mobile also invokes that Washington Consumer Protection Act.  T-Mobile does not explain how it can invoke a statute that protects Washington consumers applied to conduct that, for the most part, has no apparent impact on Washingtonians.  T-Mobile alleges that Mr. Leung makes some sales to Washingtonians, but provides no more particularized allegations, and no evidence as to the volume and type of sales to Washingtonians.  On this record, the court could not make a reasonable assessment of the

ORDER – 6

damages arising from Mr. Leung's Washington activity. The court could perhaps order injunctive relief as to Washington-targeting practices, but T-Mobile has not requested it.

The court could similarly discuss each of the fourteen causes of action that T-Mobile asserts. The court declines to do so, and instead summarizes its ruling as follows: the court is unable to conclude, based on the allegations and evidence before it, that Mr. Leung violated the law in a manner that justifies the imposition of the default judgment and permanent injunction that T-Mobile prays for. The court in no way suggests that Mr. Leung is not liable, it merely holds that the complaint and motion before it do not establish his liability except in the limited ways the court has identified. Should T-Mobile decide to renew its request for default judgment, the court urges it to reconsider its approach. It is difficult, to say the least, to adequately explain fourteen different causes of action in a brief of any length. The complaint's 37 pages serve more to obscure T-Mobile's case against Mr. Leung than to illuminate it. T-Mobile would be well served to focus on fewer claims while devoting more attention to establishing the elements of each of them.

In addition, the court observes that T-Mobile has put forth insufficient evidence to justify its damages claims. T-Mobile has submitted 209 pages of printouts of Craigslist advertisements that Mr. Leung posted. It has not cited a single one of those pages, and it has not provided an adequate summary of the evidence contained therein. Its bald claim that these 209 pages prove the sale of at least 509 T-Mobile phones and 42 SIM cards is unavailing without a summary or other means of assessing the evidence. Also unavailing is the claim that T-Mobile loses $276 per phone that Mr. Leung sells and $106 for each SIM card. The only evidence supporting those assertions are two declarations from previous cases. The court has no basis to conclude that those declarations are evidence of T-Mobile's damages in this case.

ORDER – 7

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion for a default judgment.  Dkt. # 15.

DATED this 11th day of July, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8