HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW CHONG, <br><br> Defendant. | CASE NO. C13-29RAJ <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the court on Plaintiff's second motion for default judgment.  Dkt. # 20.  For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.  This order includes a permanent injunction that will apply to Defendant Andrew Chong once he is served with this order.  The court directs the clerk to enter judgment in accordance with this order.  The court dismisses without prejudice all of T-Mobile's claims on which it does not enter judgment.

## II.  BACKGROUND

Plaintiff T-Mobile USA, Inc. ("T-Mobile") brought this action after discovering that Andrew Chong[1] sells T-Mobile branded cellular phones and "SIM cards."  Mr. Chong does not have T-Mobile's permission to resell any T-Mobile products.  T-Mobile

---

[1] T-Mobile originally believed that the name of the Defendant was Andrew Leung.  When it discovered that his name was actually Andrew Chong, it obtained an order from the court to correct the error.  Dkt. # 19.

ORDER – 1

sued not only to stop him from reselling T-Mobile products, but to recover damages it sustained as a result of his past sales.

Mr. Chong has never appeared in this action or indicated an intent to defend himself.  T-Mobile has already attempted to obtain a default judgment and permanent injunction, but in a July 11, 2013 order, the court declined to award any relief.  Dkt. # 17.

T-Mobile has now renewed its motion, although it has substantially narrowed the scope of the default judgment it seeks.  It seeks judgment only as to four of the fourteen causes of action it attempted to state in its complaint.  It asks for judgment on its claim for breach of the "T-Mobile Terms and Conditions," the 10-page service contract (hereinafter "T-Mobile Contract") that binds those who activate its cellular phones.  It also asks for judgment on its claim that Mr. Chong's resales violate the prohibition on false designation of the origin of goods found in a portion of the Lanham Act.  15 U.S.C. § 1125(a).  It also asks for judgment on its claims for violation of Washington's Consumer Protection Act and Washington's common law of unfair competition, although it concedes that these claims are wholly derivative of its Lanham Act claim.

As explained below, the court concludes that T-Mobile is entitled to default judgment solely as to its breach of contract claim.  Because T-Mobile has not provided adequate evidence or allegations of damages arising from Mr. Chong's breaches of the T-Mobile Contract, the court will award only nominal damages.  This order includes a permanent injunction prohibiting Mr. Chong from further breaches of the T-Mobile Contract.

### III.   ANALYSIS

The court's role in reviewing a motion for default judgment is not ministerial.  It must accept all well-pleaded allegations of the complaint as fact, except facts related to the amount of damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Where those facts establish a defendant's liability, the court has discretion,

ORDER – 2

not an obligation, to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The plaintiff must submit evidence supporting a claim for a particular sum of damages. *TeleVideo Sys.*, 826 F.2d at 917-18; *see also* Fed. R. Civ. P. 55(b)(2)(B). If the plaintiff cannot prove that the sum it seeks is "a liquidated sum or capable of mathematical calculation," the court must hold a hearing or otherwise ensure that the damage award is appropriate. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

Before considering T-Mobile's claims against Mr. Chong, it recounts Mr. Chong's wrongdoing, relying solely on the allegations of T-Mobile's complaint.

Mr. Chong traffics in T-Mobile's prepaid cellular phones. As the terminology suggests, customers who buy these phones prepay T-Mobile for minutes of cellular airtime. Although the customer also pays a monthly fee to use a prepaid phone, he or she is not obligated to continue paying such fees.

T-Mobile sells phones to prepaid customers only at authorized retailers. All of those phones contain SIM cards, which apparently store information, including information about airtime, that enable T-Mobile to control its prepaid services. T-Mobile subsidizes the sale of its phones by selling them at a retail price below their cost, with the hope that the customers who purchase the phones will eventually make T-Mobile's subsidy profitable by purchasing additional months of service and additional airtime. As an additional inducement to purchase, the subsidized phones often (or perhaps always) come with SIM cards that are pre-loaded with an allotment of airtime minutes. In order to use the SIM cards, customers must "activate" their phones. Often, this process takes place with the assistance of the authorized retailer who sells the phone. Sometimes, customers activate their phones through a T-Mobile website by using activation codes that are packaged along with the phones.

ORDER – 3

Mr. Chong subverts T-Mobile's expectations in two ways. First, he and "runners" acting at his direction buy prepaid T-Mobile phones. Although the complaint does not explain how, it appears they are able to do so without activating the phones through the authorized retailers from whom they buy them. Mr. Chong then sells the phones to customers both overseas and domestically. To do so, he "unlocks" the phone, which is to say that he disables or modifies software or hardware embedded in the phones that is designed to ensure that the phones are used only on T-Mobile's cellular network. Mr. Chong profits because he obtains phones at a subsidized price and resells them for a higher price.

In addition, Mr. Chong resells SIM cards extracted from T-Mobile phones. He sometimes does so by honestly stating the number of airtime minutes embedded on each card. Other times, he falsely advertises the SIM cards as permitting "unlimited" minutes or otherwise overstates the amount of airtime. In order to resell SIM cards, it appears that Mr. Chong at least sometimes uses T-Mobile activation codes. Because customers who purchase such SIM cards are invariably T-Mobile customers, some of them blame T-Mobile when they discover that their cards provide less airtime than advertised. Some of them contact T-Mobile to complain.

Mr. Chong lives in New York City. T-Mobile has known about his activities since at least April 2010. The only specific information available to the court about the manner in which Mr. Chong makes sales is a collection of hundreds of pages of ads from the Craigslist website. T-Mobile has provided some of those ads for the court's review, but has not presented them in a way that allows the court to draw meaningful conclusions about the way in which Mr. Chong advertises the T-Mobile phones he resells.

### A. Breach of Contract Claim

The T-Mobile Contract, which applies to anyone who activates T-Mobile service after purchasing a prepaid phone, contains two provisions that Mr. Chong has violated.

ORDER – 4

The first, at paragraph 18, is a broad prohibition on "Misuse of Service or Device." It prohibits many uses of T-Mobile service, including "reselling or rebilling [T-Mobile] service", using the device in a manner that "adversely affects [T-Mobile] customers, employees, [or] business . . . ," "reselling T-Mobile devices for profit, or tampering with, reprogramming or altering T-Mobile Devices for the purpose of reselling the T-Mobile device," and more. The second, at paragraph 29, applies specifically to prepaid phone services. It concludes with a declaration that "[i]f you purchase a T-Mobile Device that is sold for use on T-Mobile Prepaid Service, you agree that you intend it to be activated on our Service, and do not intend to, and will not, resell, modify and/or export the T-Mobile devices, or assist someone in these activities."

The complaint plausibly alleges that Mr. Chong both breached these provisions and assisted or directed others in their breaches of these provisions.

**B.     Lanham Act Claim**

T-Mobile contends that Mr. Chong violated that Lanham Act. In its motion for default judgment, it focuses solely on Act's prohibition on false designations of origin. 15 U.S.C. § 1125(a)(1)(A). It does not mention, for example, the Act's prohibition on false advertising.

The court is not persuaded that T-Mobile has alleged conduct that violates the Lanham Act. The complaint does not allege that Mr. Chong falsely designates the origin of T-Mobile products; indeed, he touts the phones and SIM cards that he sells as T-Mobile products. Generally speaking, the first sale doctrine permits a person who has acquired a trademarked good to resell that good. *See*, *e.g.*, *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995).

T-Mobile hopes to take advantage of an exception to the first sale doctrine that prohibits the resale of trademarked goods that have been significantly altered. The problem is that T-Mobile's complaint does not allege significant alterations. It alleges

ORDER – 5

instead that Mr. Chong resells its phones and SIM cards out of their original packaging, stripped of manuals, warranty information, and the like. The court accepts that allegation, but it is not adequate to demonstrate a violation of the Lanham Act. Even assuming that Mr. Chong's conduct voids T-Mobile's warranties, the Lanham Act does not prohibit resale under those circumstances. *Sebastian Int'l*, 53 F.3d at 1076 (citing case law establishing that first sale doctrine applies even when downstream customers believe that the original product is protected by the manufacturer's servicing agreements and warranties). In cases where the repackaging of trademarked goods has a material impact on the quality of the goods, courts have been willing to consider requiring the reseller to include a "repackaging notice" along with the resold goods. *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1086 (9th Cir. 1998). But to prohibit resale entirely is a different matter.

The court does not suggest that T-Mobile could not prove a violation of the Lanham Act's prohibition on false designations of origin, it merely holds that the allegations of its complaint do not establish one, and that the argument in its motion (which relies largely on non-binding authority) does not establish a violation either. With no adversary to challenge T-Mobile's view of the Lanham Act, the court is reluctant to create precedent (even non-binding precedent) suggesting that the mere repackaging of goods is a violation of the Act. Based on the allegations of T-Mobile's complaint and its argument in its motion, the court declines to exercise its discretion to enter judgment as to T-Mobile's Lanham Act claim. For the same reason, the court will not enter judgment as to T-Mobile's Washington CPA and unfair competition claims.

**C.   Damages**

The only damages for which T-Mobile provides evidence are just under $20,000 in investigative costs. The only evidence supporting those costs is the declaration of an investigator who states as follows: "[I] was hired by T-Mobile to investigate Andrew

ORDER – 6

Chong. The total cost of the investigation was $19,839.99." Drobny Decl. (Dkt. # 22) ¶ 5. On this thin evidence, there is no way to conclude that T-Mobile's investigative costs are properly deemed damages flowing from Mr. Chong's breach of contract.

T-Mobile's complaint establishes that it suffers monetary damages as a result of Mr. Chong's breaches of contract. At a minimum, it loses part or all of the subsidy that it invests in each prepaid phone. What T-Mobile's complaint and the evidence supporting its motion for default judgment do not establish is the amount of those damages. The court accordingly will award nominal damages of one dollar.

**D.  Attorney Fees**

T-Mobile requests about $46,000 in attorney fees. The sole authority it cites that would permit the court to award attorney fees is the Lanham Act. Because the court is not entering judgment as to the Lanham Act claim, it cannot award attorney fees under the Lanham Act.

The court notes, moreover, that T-Mobile requests more than $17,000 in attorney fees for work on its first motion for default judgment, a motion that the court denied in its entirety. Even if T-Mobile had invoked a valid basis for an award of attorney fees, the court would not award fees for unsuccessful work.

**E.  Permanent Injunction**

The standard that a party seeking a permanent injunction must meet is essentially the same as the standard applicable to preliminary injunctive relief. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). That standard requires a party to establish (1) a likelihood of success on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of hardships tips in its favor, and (4) that the public interest favors an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). A party can also satisfy the first and third elements of the test by raising serious questions going to the merits of its case and a

ORDER – 7

balance of hardships that tips sharply in its favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) (noting that it appears settled that *Winter* did not "change the requisite showing for any individual factor [in the Ninth Circuit's preliminary injunction analysis] other than irreparable harm"). A court imposes a permanent injunction after a party has prevailed on the merits, thus replacing the plaintiff's burden to show a likelihood of success on the merits with the burden to actually succeed on the merits. *Amoco*, 480 U.S. at 546 n.12.

T-Mobile has demonstrated the likelihood that it will be irreparably harmed absent an injunction. T-Mobile has shown that unless he is enjoined, Mr. Chong is likely to continue reselling T-Mobile phones and SIM cards in breach of the T-Mobile Contract. Each time he does, he causes monetary harm to T-Mobile. Typically, mere monetary harm is not irreparable, but it is in this case. Without investing considerable resources in tracking Mr. Chong's resale activity, T-Mobile has no way to assess the ongoing financial harm his continuing sales would cause. Financial harm that cannot practically be remedied is irreparable harm.

Other factors support the issuance of an injunction as well. To prevent irreparable harm, the court need only impose an injunction that prohibits Mr. Chong from selling or activating T-Mobile cellular phones and SIM cards. Because there is no indication that any of Mr. Chong's sales or activations comply with the T-Mobile contract, this injunction is not overbroad. Whereas the injunction might impose a financial burden on Mr. Chong, he has no right to earn money by breaching T-Mobile's contracts. His financial interest, to the extent it is cognizable, is outweighed by the financial hardship to T-Mobile. To the extent that the public interest is implicated at all in this dispute, it favors the enforcement of the T-Mobile Contract.

ORDER – 8

### IV. PERMANENT INJUNCTION

Upon service of this order, Defendant Andrew Chong is permanently enjoined from selling or activating any cellular telephone or SIM card that T-Mobile has offered for sale, regardless of the source from which Mr. Chong acquires that cellular telephone or SIM card.  He is further enjoined from inducing others or assisting others in selling or activating any cellular telephone or SIM card that T-Mobile has offered for sale, regardless of the source from which the other person acquires that cellular telephone or SIM card.

### V. CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part T-Mobile's motion for default judgment.  The clerk shall enter judgment in T-Mobile's favor, in accordance with this order, solely as to T-Mobile's breach of contract claim.  The court dismisses T-Mobile's remaining claims without prejudice.

DATED this 4th day of April, 2014.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9